IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DECATURE TOUNSEL, SR. ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> FIRST AMERICAN BANK, ) <br> Defendant. ) <br> ) | Case No. 03 C 2436 <br><br> Judge Mark Filip <br> Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION & ORDER

Plaintiff Decature Tounsel, Sr., who is black, filed a Title VII race discrimination claim against defendant First American Bank ("Bank") alleging that on November 6, 2002, the Bank's Chairman and Chief Executive Officer Thomas Wells terminated him because of his race. This matter is before the court for ruling on *Plaintiff's Motion to Compel*, in which Tounsel asks the court to compel the Bank to produce certain documents relating to investigations regarding the Bank's compliance with various federal consumer protection laws. For the reasons explained below, the court denies the motion to compel.

## Background

### A. The Federal Reserve's Compliance Evaluations and the Bank's Subsequent Agreements with the Federal Reserve, the FDIC and OBRE.

In a public disclosure document dated January 25, 2001, the Federal Reserve Bank of Chicago ("Federal Reserve") issued a performance evaluation of the Bank's compliance with the Community Reinvestment Act, 12 U.S.C. § 2901 *et seq.*, a federal law which "requires lending institutions to advertise and make available mortgages for low and moderate income markets." *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 380 (7th Cir. 1992). In the performance evaluation, the Federal Reserve found that the Bank had a poor record of lending in low-and-

moderate income areas. The Federal Reserve further concluded that the locations of the Bank's branches were not targeted to serve low-and-moderate income areas, given that only one branch was located in a moderate-income neighborhood, and no branches were in low-income neighborhoods. Additionally, the Federal Reserve lowered the Bank's initial "needs to improve" CRA rating to a rating of "substantial noncompliance" due to "substantive violations of the Equal Credit Opportunity Act and the Fair Housing Act." (Def.'s Resp. Ex. 1 at 3.) The Federal Reserve learned of those substantive violations during its compliance examination of the Bank that was conducted concurrently with the CRA performance evaluation.

In a document dated September 23, 2003, the Bank entered into a written agreement with the Federal Reserve and the Illinois Office of Banks and Real Estate ("OBRE") which required the Bank to submit "an acceptable comprehensive written plan to ensure the Bank's compliance with all applicable consumer compliance laws and regulations" ("Agreement"). (Pl.'s Mot. at Ex. B ¶ 1(a).) . Under the Agreement, among other things, the Bank specifically agreed to take steps to:

> address all violations of law and deficient practices set forth in the [Consumer Affairs] Report of Examination, including violations and deficiencies relating to compliance with the Equal Credit Opportunity Act (15 U.S.C. 1691); the Fair Housing Act (42 U.S.C. 3601 *et seq.*); the Home Mortgage Disclosure Act (12 U.S.C. 2801 *et seq.*); the Flood Disaster Protection Act of 1973, as amended (42 U.S.C. 4001-4129); and the Real Estate Settlement Procedures Act (15 U.S.C. 78g)[.]

(*Id.*)

In 2003, the Bank decided "to withdraw from the Federal Reserve System and transfer regulatory oversight to the Federal Deposit Insurance Corporation ('FDIC')." (Def.'s Resp. at 2-3.) On November 18, 2003, the Bank, the FDIC and OBRE entered into a Stipulation and

Consent to the Issuance of an Order to Cease and Desist, under which the Bank consented to allow the FDIC and OBRE to enter an Order to Cease and Desist against it. The Order to Cease and Desist was entered on December 9, 2003. Many of the requirements of the agreed Order to Cease and Desist are substantively similar to requirements that were part of the Bank's Agreement with the Federal Reserve.

### B.     The Discovery Dispute

During the course of discovery in Tounsel's employment discrimination case against the Bank, Tounsel served a document request (Document Request Number 22) asking the Bank to produce its "complete file in connection with the Federal Reserve System's investigation of [the Bank] for violations of the Community Reinvestment Act, ("CRA"), 12 U.S.C. § 2901 *et seq.*, including without limitation, all records and reports of the findings of the investigation, reasons therefor, and [the Bank's] responses thereto." (Pl.'s Mot. Compel ¶ 4, quoting plaintiff's Doc. Req. No. 22.) The Bank objected to that request for production of documents, asserting that the document request sought information that is neither relevant to the case, nor reasonably calculated to lead to the discovery of relevant, admissible information. In an effort to resolve the discovery dispute, plaintiff's counsel subsequently sent the Bank's counsel a letter dated February 19, 2004 identifying ten categories of documents that he was specifically seeking. The first eight categories relate to the Consumer Affairs Report of Examination conducted by the Federal Reserve, and the Bank's efforts to correct deficiencies identified in that Report.[1] The

---

[1] Specifically, plaintiff's counsel requested (1) the Consumer Affairs Report of Examination, (2) the Bank's written plan to address violations and deficiencies relating to compliance with the Equal Credit Opportunity Act, the Fair Housing Act, the Home Mortgage Disclosure Act, the Flood Disaster Protection Act and the Real Estate Settlement Procedures Act ("Corrective Plan"); (3) all notices of approval or rejection of the Bank's plan from the FDIC and OBRE; (4) all records relating to the Bank's

3

final two categories relate to the Bank's decision to withdraw from the Federal Reserve System and transfer regulatory authority to the FDIC. The Bank resisted the production of those ten categories of documents, asserting that the ten categories are not within the scope of Document Request Number 22, and in any event, are not relevant to the pending litigation. Tounsel then filed the pending motion to compel. After hearing oral argument, the district court ordered the parties to brief the motion to compel, and further directed the parties to brief the motion as if Tounsel had issued a document request not only for the CRA documents sought by Document Request Number 22 ("CRA documents"), but also for production of the documents identified in counsel's letter dated February 19, 2004 ("non-CRA documents") (collectively the "Requested Documents"). Subsequently, the district court referred plaintiff's motion to compel to this court for ruling.

## Analysis

In support of his motion to compel, Tounsel contends that the Requested Documents "are directly relevant to Plaintiff's claim of racial discrimination because the Bank's documented violations of federal law show a pattern of discriminatory practices and actions directed toward minorities." (Pl's Mot. ¶ 8.) The Bank, on the other hand, argues that the Requested Documents are not relevant because the discovery is unrelated to any employment or employment-related

---

adoption and implementation of the Corrective Plan; (5) all written progress reports submitted by the Bank to the Federal Reserve, FDIC and OBRE; (6) all requests by the Bank for extensions of time to comply with the provisions of the Agreement and/or Order to Cease and Desist; (7) all documents showing any actions taken by the FDIC, OBRE, or other federal or state agencies or departments against the Bank; and (8) all documents the Bank sent to its shareholders to notify them of the Order to Cease and Desist, as well as documents reflecting any changes to the notice to shareholders requested by the FDIC and OBRE. (2.19.04 letter, Pl.'s Mot., Ex. A at 2.)

4

matter. In addition to its relevance objections, the Bank asserts that production of the Requested Documents would expand the scope of discovery needlessly, potentially obscuring the employment discrimination claim and defenses that are actually at issue in this case. The Bank further contends that certain of the documents Tounsel seeks are privileged under federal regulations.[2] As explained below, the court agrees that even under the liberal rules of discovery, the Requested Documents are not sufficiently relevant to the pending litigation to require their production.

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Before the amendment of Rule 26(b)(1) in 2000, "information was generally discoverable if it was relevant to the subject matter involved in the pending action." *Sanyo Laser Products, Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 498 (S.D. Ind. 2003). The change in the rule "signals to the court that it has authority to confine discovery to the claims and defenses asserted in the pleadings[.]" Advisory Committee Notes to 2000 Amendments to Fed. R. Civ. P. 26(b)(1). The

---

[2]Specifically, the Bank contends that in accordance with regulations promulgated by the Federal Reserve, the Consumer Affairs Report of Examination is privileged from disclosure and may not be disclosed absent authorization from the Board of Governors of the Federal Reserve System. Because the court finds that the Requested Documents are not relevant, the court need not address the privilege issue. The court notes, however, that the Bank's understanding of the scope of the privilege is inaccurate. The Federal Reserve Board's regulations regarding disclosure of the Report do not trump a federal court's authority to control discovery. *In re Bankers Trust Co.*, 61 F.3d 465, 469-70 (6th Cir. 1995). The Report may be protected by the bank examination privilege, but that is a qualified privilege which does not apply to purely factual material, and which "may be overridden as to its protection of deliberative material if good cause is shown." *Id.* at 471.

"change, while meaningful, is not dramatic, and broad discovery remains the norm." *Sanyo*, 214 F.R.D. at 500. Nevertheless, as the result of the 2000 Amendment, the scope of discovery is somewhat more narrow than it used to be. *Id.* In any event, broad discovery is not the same as limitless discovery.

According to Tounsel, the Requested Documents are relevant to show a pattern of discrimination directed toward minorities. Even though this case involves an individual's allegations of disparate treatment, rather than class claims that the Bank engaged in a pattern and practice of discrimination, evidence showing a pattern of employment discrimination may be relevant to Tounsel's case. In an individual disparate treatment case, evidence of a pattern of discrimination is not sufficient to establish that an individual plaintiff was the victim of discrimination. *See Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 552 (7th Cir. 2000). For that reason, broad-based pattern evidence is "collateral to evidence of specific discrimination against the actual plaintiff." *Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990). But as long as a plaintiff has other evidence of disparate treatment, the plaintiff may also use statistical evidence to show that the disparity in treatment is the result of discrimination. *Bell*, 232 F.3d at 552; *see also Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir. 1996) (in order for court to draw an inference of discrimination based on an employer's treatment of comparable cases, a plaintiff must analyze more than a few comparison cases). Evidence of a pattern of discrimination may be relevant to show that "the individual's adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination, or that the employer's articulated reasons for the adverse action was merely pretext[.]" *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031

(1999) (internal citations omitted).

Accordingly, a plaintiff in an employment discrimination case generally may obtain discovery regarding the employer's treatment of other employees who are similarly situated to plaintiff. *See, e.g., Lyoch v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 62, 67 (E.D. Mo. 1995). "The key qualifier, however, is that in order to be relevant, the evidence must involve other persons 'similarly situated' to plaintiff." *Schuster v. Shepard Chevrolet, Inc.*, No. 99 C 8326, 2002 WL 507130, at *2 (N.D. Ill. Apr. 3, 2002) (in ADEA case where plaintiff had been a manager, court granted motion in limine to exclude evidence of age demographics of sales personnel). As a result, courts may properly limit discovery "to the relevant corporate department, similarly situated employees, time period, and decisionmakers." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003). It is likewise appropriate to limit discovery to the particular employment practices at issue in the case. *See, e.g., Robbins v. Bd. of Educ.*, 105 F.R.D. 49, 62 (D. N.J. 1985) (where plaintiff claimed she was denied tenure because of her race, the court allowed discovery relating to the employer's practices regarding tenure and the terms and conditions of employment, but not discovery regarding hiring, promotion, transfer and discharge, which were "one step beyond the parameters of relevance in its broadest sense").

The problem with the discovery Tounsel seeks is that the Requested Documents relate to the Bank's lending practices, not to the Bank's employment practices and whether the Bank engaged in a pattern of employment discrimination. According to Tounsel, racially-discriminatory lending practices are "obviously relevant" to the Bank's employment practices and policies as they relate to Tounsel. (Pl.'s Reply at 5.) The court disagrees. Because the Bank's customers are not similarly-situated to its employees, discovery into the Bank's lending

practices is "beyond the parameters of relevance in its broadest sense." *Robbins*, 105 F.R.D. at 62.

Suppose a customer sued the Bank under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, alleging that the Bank discriminated on the basis of race in setting the terms and conditions of residential real-estate mortgages. The customer would be entitled to discovery relating to the Bank's mortgage lending practices regarding other customers or potential customers who were similarly-situated. The customer might even persuade the court to take an expansive view of which other customers qualify as similarly-situated, or to permit discovery regarding non-real estate lending practices, if the facts of the cases supported a need for broader discovery. *C.f. Robbins*, 105 F.R.D. at 62 (to obtain discovery of employment practices other than those at issue in the case, plaintiff "must show a more particularized need and relevance"). But the court is hard-pressed to imagine circumstances in which a Fair Housing plaintiff challenging *lending* practices would be entitled to discovery regarding the Bank's *employment* practices. The same reasoning applies to Tounsel. The claim at issue here is an employment discrimination claim based on race. Because Tounsel is entitled to information relating to that claim under Rule 26(b)(1), he is entitled to discovery regarding the Bank's employment practices. Discovery regarding the Bank's lending practices, on the other hand, is unwarranted.

Tounsel's arguments do not persuade the court to rule otherwise. For example, Tounsel explains that the Agreement and the Order to Cease and Desist reference the Bank's violations and deficiencies relating to the Home Mortgage Disclosure Act ("HMDA"), 12 U.S.C. § 2801, *et seq.* To comply with the HMDA, banks are obligated to collect and report data regarding applications for home purchase loans, home improvement loans, and refinancings. 12 C.F.R.

§ 203.4. The required data includes, among other information, the type and purpose of the loan or application, the amount of the loan or amount applied for, whether the loan was authorized or not, the ethnicity, race, and sex of the applicant or borrower, and the gross annual income relied upon in processing the application. *Id.* Because the Federal Reserve noted violations or deficiencies in the Bank's reporting under the HMDA, Tounsel relies on *Edwards v. Flagstar Bank*, 109 F. Supp. 2d, 691, 704 (E.D. Mich. 2000), *rev'd in part on other grounds*, *Paschal v. Flagstar Bank*, 295 F.3d 565, 574 (6th Cir. 2002), to argue that HMDA data may prove that the Bank acted with discriminatory animus against African-Americans. What Tounsel fails to acknowledge, however, is that the plaintiffs in *Edwards* were customers suing for violations of the Fair Housing Act, not employees alleging employment discrimination. *Edwards*, 109 F. Supp. 2d at 693. HMDA data was relevant to their claims because the data showed that the defendant bank approved significantly more loans for white applicants than for African-American applicants. *Id.* at 700. *Edwards* does not support the conclusion that HMDA data and other information regarding the Bank's lending practices are relevant to the employment discrimination claim at bar. The *Edwards* plaintiffs relied on comparative evidence relating to other loan customers or potential customers, *id.*, just as Tounsel will have to rely on comparative evidence regarding other similarly-situated employees.

Tounsel further contends that the same top-level executives who made the decision to terminate his employment were the ones responsible for the Bank's compliance with the Fair Housing Act, Equal Credit Opportunity Act and other consumer lending laws. Thus, according to Tounsel, he is entitled to the Requested Documents regarding the Bank's regulatory compliance, which "are likely to shed light on the true motivations of the Bank's

9

decisionmakers." (Pl.'s Reply at 5.) Chairman and CEO Thomas Wells, who made the decision to terminate Tounsel, was not a member of the Retail Loans Committee that was responsible for final decision-making regarding the Bank's compliance with consumer lending laws, but the members of the Retail Loans Committee all reported to Wells. But if the court accepted Tounsel's argument, any decisions made by Wells or attributable to Wells as the head of the Bank would be fair game for discovery. Discovery is not that broad. Moreover, Tounsel's desire to analyze the Bank's lending decisions to ascertain the motives underlying its employment decisions ignores the fact that there are significant differences between the types of decisions a bank makes in the employment context and the decisions it makes in reviewing loan applications. Discovery regarding the Bank's lending practices is not warranted.

The core of Tounsel's argument is that the rules of discovery are liberal, particularly in discrimination cases. There are limits to discovery, however. Tounsel did not cite a single employment discrimination case in which a court allowed such expansive discovery. Nor did the court's independent research reveal a case supporting Tounsel's sweeping view of what constitutes permissible discovery in an employment discrimination case. The court concludes that the Requested Documents, which relate to lending practices, are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this employment discrimination matter.[3]

---

[3] Even if Tounsel were entitled to discovery regarding potentially discriminatory lending practices—which he is not—Tounsel's discovery requests are overly broad to the extent they target more than potentially discriminatory lending practices.

By way of example only, Tounsel seeks discovery regarding the Bank's decision to withdraw from the Federal Reserve System and transfer regulatory authority to the FDIC. But as the Bank explains, it remains subject to the terms of the CRA, Fair Housing Act and Equal Credit Opportunity Act regardless of which federal agency monitors the Bank's compliance. Even if the Bank's compliance

**Conclusion**

For the reasons explained above, the court denies Plaintiff's Motion to Compel.

ENTERED:

*Nan R. Nolan*

NAN R. NOLAN

Dated: February 3, 2005

United States Magistrate Judge

---

problems were relevant, the decision to transfer regulatory authority is not. Tounsel also asks for seven categories of non-CRA documents relating to the Bank's efforts to correct deficiencies identified in the Consumer Affairs Report of Examination. Those identified deficiencies included problems with compliance with the Flood Disaster Protection Act and the Real Estate Settlement Procedures Act, neither of which has anything to do with racial discrimination.

11